**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**KEN FLYNT**                                                                                                    **PLAINTIFF**

**VS.**                                                             **CIVIL ACTION NO. 3:11-cv-22-HTW-LRA**

**BIOGEN IDEC, INC.**                                                                            **DEFENDANT**

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

This cause is before the court on the defendant's Motion for Summary Judgment [docket no. 17]. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities, the court finds that the defendant's Motion for Summary Judgment is well taken and should be granted.

### I. Factual Background and Procedural History

This case involves a claim of disability-based discrimination in violation of 42 U.S.C. §12101(b)(1).[1] Ken Flynt ("plaintiff") contends he was discriminated against by his employer in violation of the American Disabilities Act ("ADA")[2] because it failed to make "reasonable accommodations" to his "known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). He timely filed[3] a Charge of Discrimination with the Equal Employment Commission Office ["EEOC"], and on August 17, 2010, the EEOC issued a Dismissal and Notice of Rights. Plaintiff filed this cause of action within 90 days of receipt of the Dismissal and Notice of Rights.

---

[1] As the alleged claims arise under federal law, the Court may properly exercise subject matter jurisdiction in the case pursuant to 28 U.S.C. § 1331.

[2] 42. U.S.C. 12101 et seq.

[3] Plaintiff's complaint ¶5.

The following facts are undisputed: Biogen Idec, Inc., ("defendant") is a biotechnology company that engages in drug discovery, research, development, and bio-manufacturing. In January 2008, it employed plaintiff as an Area Business Manager ("ABM") in Meridian, Mississippi, at an annual salary of approximately $115,000. Plaintiff worked out of his home in Meridian and did not report to a Biogen facility on a regular basis. He reported to the Regional Director for the Memphis Region, Bill Richards. Richards was based in Birmingham, Alabama, and managed approximately ten (10) ABMs. He was the sole manager for plaintiff's region and oversaw all sales activities. Plaintiff's and Richards' communications were mainly via telephone or email.

Plaintiff's primary responsibility at his job was marketing a drug called Avonex, used in the treatment of multiple sclerosis. This marketing called for presenting sales pitches to key physicians in his territory and conducting educational programs for prescribing physicians.

Defendant also markets another multiple sclerosis drug, Tysabri. Plaintiff had secondary responsibility for marketing this drug. He worked in partnership with another ABM, Justin Blackwell, to market both drugs. Blackwell had the primary responsibility for the marketing of Tysabri.

After Blackwell resigned to work at another company in early 2009, defendant contends that the market share for Avonex in plaintiff's region declined. Defendant also contends that plaintiff failed to plan an educational program in Memphis, Tennessee, and that he lacked motivation, enthusiasm and commitment to his job.[4]

---

[4] Plaintiff has not pointed to any evidence rebutting these allegations regarding the sales of Avonex after Blackwell resigned or plaintiff's own work performance.

For these reasons, Richards met with plaintiff on May 29, 2009, to present him with a performance improvement plan. They were joined on the telephone by Kristin Tzetzo, a Human Resources business partner. Richards gave plaintiff the written plan. During the discussion, plaintiff suddenly rose, interrupting the discussion, and stated that he was not feeling well and would be ending the meeting. He then left, not informing Richards or Tzetzo from what impairment he suffered.

Plaintiff departed his office and went to the office of Dr. Jennifer Whitcomb, his psychologist. On June 2, 2009, defendant was notified by Dr. Whitcomb that plaintiff would need to be out of work indefinitely due to an unspecified medical condition. Prior to this notification, defendant had not been made aware of any medical condition or health issue regarding plaintiff. Defendant informed Aetna Insurance Company ("Aetna"), defendant's short-term disability provider. Aetna then contacted plaintiff directly regarding the disability policy.

Plaintiff remained out of work, collecting disability benefits, from June 1, 2009, through late November 2009. In October 2009, Dr. Whitcomb reported to defendant that plaintiff had depression and anxiety but could return to work on November 1, 2009. This clearance to work was conditioned on plaintiff being assigned to another manager. Defendant informed Aetna that it could not reassign plaintiff to a new manager because Richards was the only Regional Director for plaintiff's region. Defendant did grant plaintiff a further extension of leave, through Aetna.

Dr. Whitcomb never identified other accommodations for plaintiff. She cleared him to return to work without restrictions on November 25, 2009, the day that his short-term disability benefits expired. Plaintiff did not return to work on that date. Richards attempted

3

to contact plaintiff by phone; plaintiff concedes that he received the calls and did not respond. Richards says he was concerned that Aetna was led to believe plaintiff had returned to work. On December 3, 2009, defendant sent a letter to plaintiff, signed by Richards, via Federal Express, instructing plaintiff to contact him by December 4, 2009, or there would be no choice but to end his employment. Plaintiff never responded to the letter, so defendant considered his employment terminated as of December 4.

The parties agree that plaintiff and Richards did not get along with one another. According to plaintiff, it was Richards's treatment of him that caused him to suffer the "debilitating condition" that necessitated his leave. In his affidavit, he stated that he was diagnosed with depression and anxiety because of the hostile work environment to which he was subjected by his former supervisor; that this condition caused symptoms such as projectile vomiting, diarrhea, and panic attacks. Plaintiff asserts that he still suffers from these panic attacks, causing him to have to take medication that makes him drowsy. Response to Mot. for Summ. J., Ex. A (Flynt Aff.), docket no. 24-1.

## II. Summary Judgment Standard

The court should grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007). A fact is material if "it might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To determine whether there is a genuine dispute as to any

material fact, the court must consider "all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence." *Turner,* 476 F.3d at 343 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). The court must make all reasonable inferences in favor of the non-moving party, *Reeves,* 530 U.S. at 150; "however, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

### III. The Parties' Claims

Defendant contends that plaintiff's "failure to accommodate" claim under the ADA fails because (1) plaintiff has no "disability" within the meaning of the ADA; (2) plaintiff is not a "qualified individual" under the Act; (3) the only accommodation plaintiff sought – to return to work under a different supervisor– is unreasonable as a matter of law; and (4) plaintiff was in fact reasonably accommodated until his medical restrictions were lifted by his treating provider. Defendant relies on the pleadings, along with the Affidavit of Kelly Clements, Director of Human Resources for Biogen Idec, Inc. [Exhibit A to Motion for Summ. Judg., docket 17-1] and the Deposition of Ken Flynt [Exhibit B to Motion for Summ. Judg., docket 17-2].

Plaintiff responds, contending that the ADA Amendments Act of 2008, which went into effect on January 1, 2009, expands the definition of disability in favor of broad coverage. 42 U.S.C. § 12101.4(A). This expansion includes his impairment as a qualifying disability, according to plaintiff. Plaintiff charges that the case law cited by defendant is based upon the courts' interpretations of the ADA prior to the 2008 amendments.

5

According to plaintiff, defendant denied his request for a reasonable accommodation because it did not "truly engage in the interactive process to determine a reasonable accommodation." Plaintiff's Brief in Response, docket no. 25, p. 2. While plaintiff concedes that requesting another supervisor was not a reasonable accommodation, plaintiff contends that defendant could have worked with his doctor to find one; defendant could have determined if plaintiff could be reassigned to another equivalent position in the company; or defendant could have required Richards to alter his management style so that plaintiff could perform his job without aggravating his disability. Plaintiff relies on the pleadings and on his affidavit [docket no. 24-1].

### IV. Analysis

In his deposition, plaintiff testified that the only claim he asserts in this case is defendant's alleged failure to accommodate his impairment by refusing to assign him to a new supervisor. (Plf. Dep. at 12-13, 197, 250-251, Exhibit B, docket no. 17-2). In his response to the motion for summary judgment, he now asserts that defendant should have interacted with him in an effort to fashion a reasonable accommodation; he concedes that reassignment to another supervisor is not a reasonable accommodation under the law.

It is undisputed that Dr. Whitcomb diagnosed plaintiff with depression and anxiety; further, that Dr. Whitcomb found that he was disabled for a period of six months. It is also undisputed that Dr. Whitcomb released plaintiff to return to work *without restrictions* as of November 25, 2009.

The court finds that the evidence does not establish that plaintiff's impairment qualified as a "disability" under the ADA. The ADA provides that,

> [n]o covered entity shall discriminate against a qualified
> individual with a disability because of the disability of such
> individual in regard to [the] ... advancement, [or] discharge of
> employees, ... and other terms, conditions, and privileges of
> employment.

42 U.S.C. § 12112(a)(2005). For the purposes of the ADA, a "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities" include, but are not limited to: "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2. An individual is "substantially limited" in working when he is

> significantly restricted in the ability to perform either a class of
> jobs or a broad range of jobs in various classes as compared
> to the average person having comparable training, skills and
> abilities. The inability to perform a single, particular job does
> not constitute a substantial limitation in the major life activity of
> working.

*Id.,* § 1630.2(j)(3)(I).

In this case, plaintiff has not shown that his impairment prevented him from doing a broad class of jobs; he has only alleged that he could not work with Richards. Yet, even his own physician did not restrict him from working with Richards. Plaintiff does not contend that he could not work at his same job if he were assigned another supervisor.

The court agrees that its prior decision in *Ghoston v. Nissan North America, Inc.,* No. 3:05cv766-HTW, 2008 WL 879737 (S.D. Miss. Mar 30, 2008), cited by defendant, is controlling in the instant case. In *Ghoston*, a Nissan employee was diagnosed with

7

depression and anxiety and placed on a temporary medical leave. After a period of leave, his psychiatrist recommended that he could return to work if he were placed with a different supervisor. As did Biogen, Nissan rejected this "accommodation," and the employee did not return to work. The employee then sued under the ADA.

This court granted summary judgment in favor of Nissan, stating the following:

> This residual restriction, however, establishes no ADA "disability" because even permanent inability to work under a specific supervisor does not imply any substantial limitation on major life activities. It is well-settled that the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working and therefore does not constitute a "disability" under the ADA.

*Id.* at *4.[5]

As the defendant notes in its memoranda, this court cited numerous cases that support the proposition that inability to work with a specific person does not establish disability, nor does an employer have a duty under the ADA to accommodate such a restriction.[6] The court finds very little distinction in the case now before it, and these legal precedents are controlling herein.

Plaintiff attempts to distinguish the authorities cited by defendant by calling this law "old precedent." Plaintiff's Brief, docket no. 25, p. 4. Plaintiff points out that this case is

---

[5] In support, this court cited *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996), *cert. denied,* 519 U.S. 1093 (1997); *Toyota Mfg., Kentucky, Inc. v. Williams*, 532 U.S. 184 (2002) (employee must have impairment that prevents or severely restricts activities of central importance to most people's daily lives; inability to do repetitive work with hands or arms at or above shoulder level provides insufficient evidence or substantial limitation in major life activity); *Moreno v. Brownlee*, 2004 WL 34860, *4 (5th Cir. 2004); *Price v. Marathon Cheese Corp.,* 119 F.3d 330, 336 (5th Cir. 1997).

[6] *See* the authorities cited in defendant's Brief, docket no. 18, pp. 13-14, and in *Ghoston* at *5.

controlled by the ADA Amendments Act of 2008 ["ADAAA"], effective January 1, 2009. This Act provides that the definition of disability should be construed in favor of broad coverage; its purpose was in response to the continual limiting by the courts of what constitutes a disability under the ADAAA. 42 U.S.C.A. § 12101.4(a).

The court finds that the amended Act does not change the definition of disability or make all physical or mental impairments disabilities. Even under the amendments, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 12102(1). The plaintiff has not presented any evidence which would confirm that his depression and anxiety limits him in any major life activity. Not being able to work with Richards, as a matter of law, does *not* substantially limit any major life activity of working. *See Hatfield v. Quantum* Chemical *Corp.,* 920 F.Supp. 108, 110 (S.D. Tex. 1996) (not being able to work with supervisor did not substantially limit major life activity); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1062 (7th Cir. 2000) (personality conflict with supervisor does not establish disability). The conflicts plaintiff had with Richards, even if they caused depression and stress, simply cannot establish disability under the law.

As regards the major life activity of working, the Fifth Circuit has held: "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999). *See also Bridges v. City of Bossier*, 92 F.3d at 334 (holding that a broad class or range "implies more than two job

types."). In this case, plaintiff only contends that he cannot work with his supervisor—certainly not a "broad class of jobs" as he is required to show.

Plaintiff's primary argument in rebuttal to the motion for summary judgment is that defendant failed to "fully engage in the interactive process" toward fulfilling its obligation to accommodate him. Plaintiff concedes that transfer to another supervisor was not a reasonable accommodation, but he charges that defendant could have engaged in a process to determine what could be done instead. Plaintiff avers that neither his doctor, nor he, knew what other alternatives could have been provided. He suggests that perhaps he could have been reassigned to another equivalent position in the company. Or, Richards could have been required to alter his management style. Plaintiff suggests that rather than simply asking his doctor to come up with an accommodation, defendant should have engaged in a discussion to determine what reasonably could have been provided.

As the plaintiff points out, EEOC guidelines state that once an individual with a disability makes a request for accommodation, "it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3).

"Reasonable accommodations" include:

> [j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

29 C.F.R. § 1630.2(o)(2)(ii).

The ADA, however, "does not require an employer to relieve an employee of any essential function of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

Plaintiff has not disagreed with defendant's assertion that an essential function of his job was to interact with Richards; the ADA does not require defendant to "relieve" plaintiff of that essential duty. Plaintiff now contends that defendant could have reassigned him to an equivalent position or required Richards to alter his management style.

Defendant points out that it did accommodate plaintiff by allowing him a six-month leave for treatment of his depression and anxiety. When plaintiff's doctor recommended that he could work, but under another supervisor, he was still allowed additional leave. Dr. Whitcomb, however, then released plaintiff to work on November 25, 2009, *without restriction.* He no longer suffered from a disability, and no further accommodation was required. "[I]f an accommodation is not needed, the question of 'reasonableness' does not arise." *Moore v. Hillsborough County Bd. Of County Comm'rs*, 544 F.Supp.2d 1291, 1305 (M.D. Fla. 2008).

The court finds that because plaintiff cannot show an impairment, he is not entitled to accommodation. Even if he could show an impairment, the suggested accommodations are not timely. In *Burch*, the Fifth Circuit rejected reassignment as a reasonable accommodation when the employee failed to request it at the time the need for accommodation arose. *Id.* Plaintiff failed to request reassignment prior to filing his response. Likewise, plaintiff did not seek the accommodation of a change of management

style until filing his response. The employee must show that he requested a reasonable accommodation while he was on the job. *Fussell v. Georgia Ports Auth.,* 906 F.Supp. 1561, 1569-70 (S.D. Ga. 1995).

In sum, the Court finds that plaintiff has failed to show that there exists a genuine issue of material fact with regard to whether he was disabled for the purposes of maintaining a discrimination claim under the ADA. Accordingly, the court finds that defendant is entitled to summary judgment in this case.

## IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant for Summary Judgment [Docket No. 17] is hereby granted. A Final Judgment dismissing this case with prejudice shall be entered this day.

SO ORDERED this the 30th day of September, 2012.

/s/ Henry T. Wingate
UNITED STATES DISTRICT JUDGE

Opinion and Order Granting Summary Judgment
3:11-cv-22-HTW-LRA